UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE BOLER COMPANY,**

   **Plaintiff,**             Case No. 2:04-cv-286
                     JUDGE GREGORY L. FROST
   v.                  Magistrate Judge Norah McCann King

**TUTHILL CORPORATION,**

   **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the July 9, 2007 Motion Pursuant to 35 U.S.C. § 285 (Doc. # 97) filed by Tuthill Corporation, the memorandum in opposition (Doc. # 98) filed by The Boler Company, and the reply memorandum (Doc. # 101) filed by Tuthill Corporation. For the reasons that follow, the Court finds the motion not well taken.

### I. Background

Plaintiff, The Boler Company ("Boler"), is the owner of U.S. Patent No. 6,073,947 ("the '947 patent"). The '947 patent is titled "Substantially Weld Free Frame Bracket Assembly" and involves technology for connecting a suspension to the frame rail of a heavy duty vehicle. On April 15, 2004, Boler filed suit against Defendant, Tuthill Corporation ("Tuthill"), claiming that Tuthill was infringing on the '947 patent. The litigation proceeded to a July 6, 2005 hearing in which the parties presented argument as to the construction of the claims contained in the '947 patent. Thereafter, the Court issued a *Markman* decision that construed various disputed claims in the patent. (Doc. # 76.)

1

Following the issuance of that decision, Plaintiff conceded that it could not prevail on its claims in light of the claim construction and moved the Court to enter judgment accordingly so that the case could proceed to appeal. (Doc. # 81.) The Court entered judgment in favor of Tuthill, which retained the right to pursue attorney's fees and costs following the appeal, and administratively closed the case. (Docs. # 86, 87.) The United States Court of Appeals for the Federal Circuit subsequently affirmed this Court. (Doc. # 92.)

Following the appeal, this Court held a preliminary pretrial conference/status conference with counsel for the parties on June 25, 2007. At that conference, the parties agreed that all issues had either been disposed of, rendered moot, or withdrawn except for Defendant's pursuit of attorneys' fees and costs. The parties therefore consented to entry of an order that formally disposed of everything but the fees issue. (Doc. # 96.)

In accordance with an agreed-upon briefing schedule, the parties have briefed the first part of the fees issues–whether this case is an exceptional case warranting fees–and have left the issue of the amount of fees for later briefing, if warranted.[1] With that briefing completed, the issue of whether this is an appropriate case for an award of fees is now ripe for disposition.

---

[1] The briefing included a dispute over whether Defendant had properly moved for fees, regardless of whether Defendant actually deserved such fees. In an August 31, 2007 Order (Doc. # 102), however, the Court denied that portion of Plaintiff's memorandum in opposition (Doc. # 98) constituting a motion to strike, deny, or dismiss Defendant's motion for attorney's fees (Doc. # 97) and granted Defendant's motion to amend (Doc. # 100) the first part of its bifurcated attorney fee application to include a good faith estimate of $350,000 in fees.

## II.  Discussion

### A.  Standard Involved

Tuthill asserts that it is entitled to an award of fees under 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  In addressing a motion under this provision of patent law, a court must apply Federal Circuit precedent.  *Highway Equipment Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006) ("Federal Circuit law 'governs the substantive interpretation of 35 U.S.C. § 285 , which is unique to patent law' " (quoting *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 182 F.3d 1356, 1359 (Fed. Cir. 1999))).  *See also Haberman v. Gerber Prods. Co.*, Nos. 2006-1490 & 2006-1516, 2007 WL 1577970, at *8 (Fed. Cir. May 29, 2007) (citing *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001)).  The Federal Circuit has explained that § 285 involves a two-part inquiry in which a court must determine whether a case is exceptional and, if it is, the amount of attorney fees, if any, that is warranted as an award.  *Special Devices, Inc.*, 269 F.3d at 1344; *see also Sentex Sys., Inc. v. Elite Access Sys., Inc.*, 250 F.3d 756, 2000 WL 748070, at *1 (Fed. Cir. 2000) (table decision).

Addressing the first prong of the inquiry, that same appellate court has explained that "[a] case may be exceptional within the meaning of § 285 if a patentee intentionally, recklessly, or with gross negligence files and prosecutes a baseless infringement action."  *Sentex Systems, Inc.*, 2000 WL 748070, at *2.  Thus, "continuance of a suit in bad faith or other misconduct during trial may make a case exceptional under § 285."  *Cooper Indus., Inc. v. Juno Lighting, Inc.*, 826 F.2d 1073, 1987 WL 38103, at *2 (Fed. Cir. 1987) (table decision).

The prevailing party has the burden of proving by clear and convincing evidence that the

case is "exceptional" under § 285. *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050-051 (Fed. Cir. 1992); *see also Apotex, Inc. v. Eon Labs Mfg., Inc.*, Nos. 01-CV-0482 & 02-CV-1604, 2007 WL 656256, at *7 (E.D.N.Y. Feb. 26, 2007) (quoting *Xantech Corp. v. Romeo Ind., Inc.*, 706 F. Supp. 661, 664 (N.D. Ind. 1988)).

**B. Analysis**

Tuthill argues that this is an exceptional case in the statutory sense because Boler did not bring this action in good faith. At the core of this argument is Tuthill's contention that Boler failed to conduct a good faith analysis of whether Tuthill's product infringed the '947 patent. The defendant company posits that Boler conducted an initially superficial analysis of Tuthill's product, followed by later testing conducted only after this litigation was well underway. Tuthill also argues that Boler failed to evaluate its own patent sufficiently, with the plaintiff company continually shifting its interpretation of the patent claims throughout the trial court proceedings and even on appeal. Tuthill suggests that, in accordance with this alleged misconduct, Boler misrepresented the '947 patent.

If true, such allegations can support a finding that this is an exceptional case. The Federal Circuit has explained:

> Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions. *See, e.g., Cambridge Prods. Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050-51 (Fed. Cir.1992); *Beckman Instr., Inc., v. LKB Produkter AB,* 892 F.2d 1547, 1551 (Fed. Cir.1989). Absent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless.

4

*Serio-US Indus., Inc. v. Plastic Recovery Tech. Corp.*, 459 F.3d 1311, 1321-322 (Fed. Cir. 2006). *See also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ('Where . . . the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.").

Guided by the foregoing standard, this Court must conclude that this is not an exceptional case. Ultimately, Boler's case was weak, but it was not so without an arguable basis of infringement that this Court finds evidence of bad faith. Although a more cautious company might have elected to forego litigation, an even more zealous–i.e., *less* cautious–company would have similarly been well within its rights to seek such expansive use of its patent. Boler adopted an aggressive interpretation of its patent claims and pursued a flawed infringement case, but there was a just-sufficient basis for both courses of conduct.

The post-filing testing and re-solicitation of an opinion of infringement that Tuthill mocks arguably evinces not bad faith but prudent conduct on Boler's behalf. If the second opinion and testing Boler initiated cut against an allegation of infringement, then continuing the action would have pointed to bad faith that might have rendered the exceptional under § 285. *See Cooper Indus., Inc.*, 1987 WL 38103, at *2. But under the specific and narrow circumstances of this case, reevaluating and testing the opinions and contextually history-driven assumptions that led Boler into litigation can hardly be justifiably regarded as evidence of continued prosecution of a baseless infringement action, even if those opinions and assumptions proved flawed.

Boler's reliance on the opinion of multiple counsel that infringement existed, although

5

certainly not dispositive of the issue, helps the company avoid a finding of bad faith. The mere asserted reliance on the opinion of counsel is not an absolute shield to an award of fees. *See Eltech Sys. Corp.*, 903 F.2d at 811 (rejecting asserted reliance on the opinion of counsel due to insufficient evidence that such reliance was warranted). But this Court must give appropriately qualified credit to the opinions of the various Boler counsel who indicated a viable case of infringement.

To be certain, the conduct of Boler's various counsel throughout this litigation periodically fell short of the model prosecution of a patent case. This does not, however, invariably warrant an award of fees under § 285. *See Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1195 (Fed. Cir. 2007) (declining to award fees where counsel for both sides fell short of minimum expectations of performance in litigating a patent case). What this does mean is that, despite what can charitably be described as some uneven lawyering, Boler's counsel was not without a reasonable, if ultimately failing, basis in rendering their opinions. And in light of the prior history between these companies–which no doubt colored Michael Keeler's pre-suit approach to his analysis–Boler was not without any foundation in both relying on these opinions and believing that infringement existed.

The Court also notes that it wrestled with various aspects of the claim constructions. Although the decision presenting the final constructions of the Court may not fully reflect the closeness of some of the issues, the Court notes that such closeness suggests that this action was neither as inherently obvious nor lopsided as Tuthill would suggest. In other words, there were areas of reasonable and even considerable debate, and the mere fact that Boler lost the debate on numerous points does not mean that the company's positions were without viable, even if

ultimately invalid, foundation. Consequently, the fact that Boler's allegations of infringement were predicated upon losing constructions does not render the allegations baseless.

The fact that the court of appeals affirmed without a full opinion is of little consequence here. Attempting to read the tea leaves that a lack of an opinion presents is a risky undertaking. In the absence of any indication of why the appellate court declined it issue a full opinion, there is simply no basis to speculate that the higher court deemed the case frivolous as opposed to simply without precedential value. This Court therefore declines Tuthill's invitation to let conjecture inform today's decision.

The Court recognizes that there is some evidence supporting Tuthill's fee application. Although the opinion of counsel factor weighs in Boler's favor, the divergent theories of its various counsel and the company's post-*Markman* hearing efforts to revise its arguments partially undercuts the safe harbor the reasonable reliance on counsel helps create. The Court is equally concerned with Boler's often fairly dilatory conduct. Tuthill's briefing effectively chronicles Boler's less-than-textbook conduct throughout this litigation. For example, Boler filed its *Markman* brief late, with only a weak explanation for doing so. Equally troubling is that the company repeatedly failed to advance a timely–and arguably consistent–construction of its own patent claims. Less clear is the full extent of Boler's dilatory compliance with discovery. Even giving this last category qualified weight, Boler's remaining actions run perilously close to constituting inappropriate litigation conduct.

At the same time, however, the Court recognizes that sloppy lawyering does not always indicate the bad faith of a client or even an intent to disrupt litigation. Similarly, a shift in counsel can lead to a shift in strategies, with different attorneys viewing the case and even the

patent differently. The line between a natural adjustment in strategy or approach and wholesale misconduct arising from bad faith is often thin. Taking into account all of the circumstances of this case, the Court finds that Boler's conduct falls on the proper side of that line–but just barely.

In many respects, the § 285 issue thus presents an admittedly close call. Under the specific circumstances of this action, however, this Court must conclude that Tuthill has not met its burden of proving by clear and convincing evidence that this is an "exceptional" case. Tuthill has not sufficiently demonstrated that the action was objectively baseless, that it was brought or litigated in bad faith, or that the often poor lawyering involved rises to the level of qualifying litigation misconduct.

Moreover, even if the Court were to conclude that this is an exceptional case so as to make a potential award available, the closeness of the call and the conduct of the parties and some of their attorneys would counsel against ordering an actual award. The Federal Circuit has explained:

> Even an exceptional case does not require in all circumstances the award of attorney fees. Many factors could affect this result. The trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser.

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). This guidance informs the instant case. In addition to closeness of the merits decision, the Court notes that this litigation has not been free from poor conduct on both sides. The Court in fact previously admonished the parties, stating in its April 25, 2005 Order:

> Stated simply, the Court is tired of the apparent gamesmanship and cross-accusations of gamesmanship that have marred these proceedings and tarnished

> counsel. The incessant finger pointing, lame excuses, apparently ill-conceived litigation "strategies," and continual running to the Court have served to complicate an already poorly executed case, resulting in motions and briefing that should be unnecessary if everyone involved had at all times met their professional obligations. The resulting docket borders on a morass when by now the parties should be proceeding in a post-*Markman* hearing state. As Plaintiff states in its February 24, 2005 filing, "[i]t is well past time for the party's [*sic*] counsel to quit sparing with each other and get on with the case." (Doc. # 37, at 4.)
>
> The Court is tempted to sanction Plaintiff's conduct. But in the interest of reaching the merits of this case and recognizing that Defendant's hands are arguably not clean in all respects, the Court has elected (1) to make clear to Plaintiff that this is Plaintiff's final warning to avoid improper conduct before sanctions will be imposed, (2) to extend the same warning to Defendant, and (3) to remedy the various issues surrounding how this case has progressed in such a manner so as to place this action on a track that finally permits proper consideration of the full merits of the case.

(Doc. # 51, at 3-4.) Such a litigation history is relevant to a discretionary award of fees. *See S.C. Johnson & Son, Inc.*, 781 F.2d at 201 ("The court's choice of discretionary ruling should be in furtherance of the policies of the laws that are being enforced, as informed by the court's familiarity with the matter in litigation and the interest of justice."). The Court therefore concludes that equitable concerns would argue against a fee award even if this case were exceptional. *See id.* ("the assessment of attorney fees . . . provides an opportunity for the trial court to balance equitable concerns as it determines whether and how to recompense the successful litigant").

Tuthill is therefore not entitled to a § 285 award of attorney fees.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Tuthill's Motion Pursuant to 35 U.S.C. § 285. (Doc. # 97.)

9

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE